**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ALFREDO SERAPIO CRUZ and GUILLERMO VICTORIANO ANGEL**, Individually and on Behalf of All Others Similarly Situated,<br><br>                              **Plaintiffs,**<br><br>-against-<br><br>**WIMPY'S RESTAURANT INC., WIMPY'S RESTAURANT V INC.** and **FELICIANO VERDEJO**, Jointly and Severally,<br><br>                              **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Alfredo Serapio Cruz and Guillermo Victoriano Angel (the "Plaintiffs"), individually and on behalf of all others similarly situated, as collective and class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

**NATURE OF THE ACTION**

1.      Plaintiffs are former employees of two (2) fast food restaurants owned by Defendants, located in Manhattan, New York. While working for Defendants, they were paid below minimum wage and did not receive overtime premiums for hours worked over forty (40) in

1

a given workweek. Plaintiffs also did not receive spread-of-hours premiums when working shifts in excess of ten (10) hours and were not provided with wage notices or wage statements.

2.     Plaintiffs bring this action to recover unpaid minimum wage and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims for unpaid spread-of-hours premiums and failure to provide wage notice and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.     Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims occurred in this district and Defendants' business is located in this district.

6.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

7.     Plaintiff Alfredo Serapio Cruz ("Cruz") was, at all relevant times, an adult individual residing in Bronx County, New York.

8.     During the relevant time period, Cruz performed work for Defendants at Wimpy's Restaurant, located at 1822 Amsterdam Avenue, New York, New York 10031.

9.     Plaintiff Cruz consents in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

10.     Plaintiff Guillermo Victoriano Angel ("Angel") was, at all relevant times, an adult individual residing in New York County, New York.

11.     During the relevant time period, Angel performed work for Defendants at Wimpy's Restaurant located at 1822 Amsterdam Avenue, New York, New York 10031 and at the Wimpy's Restaurant located at 2334 2nd Avenue, New York, New York 10035.

12.     Plaintiff Angel consents in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants:**

13.     Upon information and belief, Wimpy's Restaurant Inc. is an active New York corporation doing business as "Wimpy's Restaurant" with its principal place of business at 1822 Amsterdam Avenue, New York, New York 10031.

14.     Upon information and belief, Wimpy's Restaurant V Inc. is an active New York corporation doing business as "Wimpy's Restaurant" with its principal place of business at 2334 2nd Avenue, New York, New York 10035.

15.     Wimpy's Restaurant Inc. and Wimpy's Restaurant V Inc. are hereinafter referred

to collectively as "Wimpy's" or the "Corporate Defendants."

16.     At all relevant times, the Corporate Defendants operated together as a single business enterprise utilizing the same practices and policies.

17.     The Corporate Defendants' operations are interrelated and unified.

18.     Feliciano Verdejo ("Verdejo" or the "Individual Defendant"), is an owner and operator of the Corporate Defendants who sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein.

19.     The Individual Defendant participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Corporate Defendants' other similarly situated employees and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

20.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

21.     At all relevant times, Plaintiffs and Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

22.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

23.     At all relevant times, the Corporate Defendants have used goods and materials produced in interstate commerce, and have employed two or more individuals who handled these

goods and materials.

## FLSA COLLECTIVE ACTION ALLEGATIONS

24.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second

Causes of Action as a collective action under the FLSA on behalf of themselves and the following

collective:

> All persons employed by Defendants at any time since June 4, 2015
> and through the entry of judgment in this case (the "Collective
> Action Period") who worked as non-management employees (the
> "Collective Action Members").

25.     A collective action is appropriate in this circumstance because Plaintiffs and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime

premiums for work performed in excess of forty (40) hours each week. As a result of these policies,

Plaintiffs and the Collective Action Members did not receive the legally-required minimum wages

for all hours worked and overtime premium payments for all hours worked in excess of forty (40)

hours per week.

26.     Plaintiffs and the Collective Action Members have substantially similar job duties

and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

27.     Pursuant to the NYLL, Plaintiffs brings their Third through Seventh Causes of

Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the

following class:

> All persons employed by Defendants in New York at any time since
> June 4, 2012 and through the entry of judgment in this case (the
> "Class Period") who worked as non-management employees (the
> "Class Members").

28.     The Class Members are readily ascertainable. The number and identity of the Class

Members are determinable from the records of Defendants.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

29.    <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

30.    Upon information and belief, there are in excess of forty (40) Class Members.

31.    <u>Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members</u>. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a.  whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.  whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

d.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e.  whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

f.  whether Defendants failed to provide accurate wage notice to Plaintiffs and Class Members at the beginning of his employment and/or on February 1 of each year as required by the NYLL;

g.  whether Defendants failed to provide accurate wage statements to Plaintiffs and

Class Members with each payment of wages as required by the NYLL;

h. whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

i. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

32. <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, are restaurant employees who worked for Defendants pursuant to their corporate policies.  Plaintiffs, like all Class Members, were, *inter alia*, paid less than minimum wage for all hours worked, not paid overtime premium pay for hours worked over forty (40) in a given workweek, not paid spread-of-hours premiums for days in which employees worked a spread of ten (10) or more hours, and they did not receive accurate wage notices or wage statements. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

33. <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

34. Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

35. <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

36. Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against

corporate defendants.

37.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Restaurant Business

38.     At all relevant times, Defendants have been in the food service industry. Specifically, Defendants own, operate and manage at least four (4) fast food restaurants in Manhattan, New York:

    a.  Wimpy's Restaurant Inc., located at 1822 Amsterdam Avenue, New York, New York 10031;

    b.  Wimpy's Restaurant V Inc., located at 2334 2nd Avenue, New York, New York 10035;

    c.  Wimpy's Restaurant III, Inc., located at 1232 St. Nicholas Avenue, New York, New York 10032; and

    d.  Wimpy's Restaurant IV Inc., located at 1634 Madison Avenue, New York, New York 10029.

39.     Upon information and belief, and according to corporate materials filed with the New York State Department of State, Division of Corporations, Defendant Feliciano Verdejo is the CEO of Wimpy's Restaurant Inc., Wimpy's Restaurant V Inc., and Wimpy's Restaurant III, Inc.

40.     The Individual Defendant is a constant presence at all of the Wimpy's Restaurants

locations, where he oversees the business, speaks with managers, interacts with clientele, supervises employees and generally takes an active role in ensuring that the restaurants are run in accordance with his practices and procedures.

**Plaintiffs' Work for Defendants**

41.    Plaintiff Angel was employed by Defendants as a line cook, food prep, cashier, and porter at the 1822 Amsterdam Avenue location and the 2334 2nd Avenue location, from in or around 2009 through in or around February 27, 2018 (the "Angel Employment Period").

42.    Plaintiff Angel worked primarily at the Wimpy's Restaurant located at 1822 Amsterdam Avenue, but was requested frequently to work at the Wimpy's Restaurant located at 2334 2nd Avenue. In both locations, Plaintiff Angel was under the supervision and orders of the Individual Defendant.

43.    During the relevant time period, Plaintiff Angel worked in different capacities at the restaurants. Primarily, Plaintiff Angel was assigned to work as a food prep and line cook, most of the time at the fry station or grill station. Plaintiff Angel was also required to help clean the restaurant premises, and on Sundays, he was also required to perform the job as a cashier.

44.    From in or around 2009 to in or around December 2017, Plaintiff Angel typically worked six (6) days per week, with Saturdays off. On Monday through Friday Plaintiff Angel worked from approximately 12:00 pm to approximately 10:00 pm, and sometimes later, and on Sundays from approximately 7:00 am to approximately 5:00 pm, and sometimes later, for a total of approximately sixty (60) hours per week, and sometimes more. From in or around January 2018 to the end of his employment period, Plaintiff Angel generally worked five (5) days per week, with the same schedule, for a total of approximately fifty (50) hours per week, and sometimes more.

45.    From in or around 2009 to in or around January 2017, Plaintiff Angel was able to

take breaks, sometimes interrupted, no longer that 30 minutes per day.  From in or around January 2017 to the end of his employment period, in or around February, 2018, Plaintiff Angel was not allowed to take breaks during the course of the work day.

46.    Defendants did not provide Plaintiff Angel with a time clock, sign-in sheets or any other way to track the number of hours he worked.

47.    At the beginning of his employment period, from in or around 2009 to in or around 2013, Plaintiff Angel was paid the amount of eighty-five dollars ($85.00) per day, for a total of approximately five hundred and ten dollars ($510.00) per week. From in or around 2013 to in or around December 2017, Plaintiff Angel was paid the amount of one hundred dollars ($100.00) per day, for a total of approximately six hundred dollars ($600.00) per week. From in or around January 2018 to the end of his employment period, Plaintiff Angel was paid the same amount per day (one hundred dollars), but because his schedule was reduced to five (5) days per week, he was receiving the amount of approximately five hundred dollars ($500.00) per week.

48.    Throughout his entire employment period, Plaintiff Angel was paid in cash that he received either from the hands of Defendant Feliciano Verdejo, or his nephew, Jose Luis Verdejo, who was a manager of Defendants' restaurant. At no time did Plaintiff Angel receive any paystub or wage statement showing his regular and/or overtime rates or the number of hours that he worked in a given workweek.

49.    Plaintiff Angel frequently saw the Individual Defendant at the two (2) restaurants where he performed work for Defendants, overseeing the operations of the business, speaking with the managers, interacting with the clientele, and in general supervising employees.

50.    Although Plaintiff Angel typically worked well in excess of forty (40) hours per week, he was paid a daily rate that did not compensate him at minimum wage or provide overtime

premiums for hours that he worked in excess of forty (40) hours in a given workweek.

51.     Throughout his employment with Defendants, Plaintiff Angel frequently worked shifts in excess of ten (10) hours in one day, yet Defendants failed to pay Plaintiff Angel spread-of-hours premiums consisting of an extra hour of minimum wage for such days.

52.     At no point during Plaintiff Angel's employment did he receive a wage notice showing his hourly or overtime rate.

53.     Plaintiff Alfredo Serapio Cruz was employed by Defendants at the Wimpy's Restaurant located at 1822 Amsterdam Avenue, as line cook, food prep, porter, cashier, and cleaning employee from in or around 2004 through in or around October 2016 (the "Cruz Employment Period").

54.     During his employment period, Plaintiff Cruz worked in different capacities at the restaurant. Primarily, Plaintiff Angel was assigned to work as a food prep, line cook, and porter unloading products and kitchen inventory from the delivery trucks. During his shift, and especially on Sundays, Plaintiff Cruz was also required to help clean the restaurant premises, and frequently, if there were no cashier available at the restaurant, he was also asked to perform that job.

55.     Throughout his entire employment period, Plaintiff Cruz typically worked six (6) days per week, with most Tuesdays off, with the following schedule: Mondays, from approximately 12:00 pm to approximately 10:00 pm; Wednesdays, from approximately 7:00 am to approximately 10:00 pm; Thursdays, from approximately 12:00 pm to approximately 10:00 pm; Fridays from approximately 7:00 am to approximately 10:00 pm; Saturdays from approximately 12:00 pm to approximately 10:00 pm; and Sundays from approximately 8:00 am to approximately 4:00 pm, for a total of approximately sixty-eight (68) hours per week, or longer.

56.     Defendants did not provide Plaintiff Cruz with a time clock, sign-in sheets or any

other way to track the number of hours he worked.

57.    From in or around 2008 to in or around 2012, Plaintiff Cruz was paid the amount of four hundred eighty dollars ($480.00) per week. From in or around 2012 to in or around 2014, Plaintiff Cruz was paid the amount of five hundred dollars ($500.00) per week. From in or around 2014 to the end of his employment period, in or around October 2016, Plaintiff Cruz was paid the amount of five hundred and ten dollars ($510.00) per week.

58.    During the period Plaintiff Cruz was receiving five hundred and ten dollars ($510.00) per week, the Individual Defendant explained to him that amount was his fixed salary to compensate Cruz for the hours he was regularly scheduled to work during a workweek. If Plaintiff Cruz exceeded the number of hours he was scheduled to work in a typical workweek (i.e. 68 hours per week), the Individual Defendant paid those hours, that he erroneously called "overtime," at a rate of ten dollars ($10.00) per hour, for each hour beyond his normal number of hours per week. Similarly, if Plaintiff Cruz worked fewer hours than his typical schedule, Defendant Verdejo deducted from his weekly payment the number of hours he did not work on that specific day, i.e. one hundred dollars ($100.00) for ten (10) hours of work at ten dollars ($10.00) per hour.

59.    Throughout his entire employment period, Plaintiff Cruz was paid in cash that he received either from the hands of Defendant Verdejo, or his nephew, Jose Luis Verdejo, who was a manager of Defendants' restaurant. At no time did Plaintiff Cruz receive any paystub or wage statement showing his regular and/or overtime rates or the number of hours that he worked in a given workweek.

60.    Plaintiff Cruz frequently saw the Individual Defendant at the restaurant, overseeing the operations of the business, speaking with the managers, interacting with the clientele and

supervising the employees.

61.    Although Plaintiff Cruz typically worked well in excess of forty (40) hours per week, he was paid a daily rate that did not compensate him at minimum wage or provide overtime premiums for hours that he worked in excess of forty (40) hours in a given workweek.

62.    Throughout his employment with Defendants, Plaintiff Cruz frequently worked shifts in excess of ten (10) hours, yet Defendants failed to pay him spread-of-hours premiums consisting of an extra hour of minimum wage for such days.

63.    At no point during Plaintiff Cruz's employment did he receive a wage notice showing his hourly or overtime rate.

**Defendants' Unlawful Corporate Policies**

64.    Plaintiffs and the Collective Action Members and Class Members were all paid pursuant to the same corporate policies of Defendants, including paying a fixed salary per day or per week and failing to pay minimum wage, overtime premiums and spread-of-hours premiums.

65.    Notwithstanding the fact that that Plaintiffs and other Class Members frequently worked more than ten (10) hours in a given day, Defendants failed to pay them spread-of-hours premiums equal to an additional hour of minimum wage for each day working in excess of ten (10) hours. Defendants' failure to pay Plaintiffs and Class Members spread-of-hours premiums was a corporate policy that applied to all of Defendants' employees working shifts of more than ten (10) hours in one day and/or split shifts.

66.    Plaintiffs have spoken with other employees of Defendants, who similarly worked in excess of forty (40) hours per week during the Class Period and were similarly paid a fixed salary per day or per week that did not provide overtime premiums of one and one-half (1.5) times their hourly rate for hours worked over forty (40) hours per week. Defendants' failure to pay

Plaintiffs and Class Members overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week was a corporate policy of Defendants, which applied to all of their hourly employees throughout the relevant period.

67.    Plaintiffs have spoken with other employees of Defendants, who similarly were paid in cash and received no pay stub or wage statements with their payment of wages. Defendants' failure to provide wage statements in accordance with the requirements of the NYLL was a corporate policy that applied to all hourly employees throughout the relevant time period.

68.    Defendants did not provide Plaintiffs or Class Members with proper wage notices at the time of hire or by February 1 of each year.

69.    Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

### FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

70.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

71.    By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

72.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

73.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the

Collective Action Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

74.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

75.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

76.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

77.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
### (Brought on Behalf of Plaintiffs and the Class Members)

78.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

79.     Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked in violation of the NYLL and regulations promulgated thereunder.

80.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and the Class Members)

81.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

82.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

83.    Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

84.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

85.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the applicable minimum wage in all instances where the Plaintiffs and Class Members worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

86.    Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

## SIXTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

87.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

88.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

89.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS
### (Brought on Behalf of Plaintiffs and the Class Members)

90.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

92.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred fifty dollars ($250) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.     Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b)

to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.    An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

i.      Fifty dollars ($50) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.      Two hundred fifty dollars ($250) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.      An award of prejudgment and post-judgment interest;

l.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      June 4, 2018

                        Respectfully submitted,

                        **PELTON GRAHAM LLC**

                        By: _____
                        Brent E. Pelton (BP 1055)
                        pelton@peltongraham.com
                        Taylor B. Graham (TG 9607)
                        graham@peltongraham.com
                        111 Broadway, Suite 1503
                        New York, New York 10006
                        Telephone: (212) 385-9700

Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

# CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Wimpy's Restaurant, Feliciano Verdejo y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

x _____
Firma

Alfredo Serapio
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Wimpy's Restaurant, Feliciano Verdejo y todos sus otros y sus otros respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____
Firma

_____
Nombre Escrito