

**PELTON GRAHAM LLC**

111 BROADWAY, SUITE 1503, NEW YORK, NEW YORK 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ WWW.PELTONGRAHAM.COM

**BRENT E. PELTON, ESQ.**                                               NOVEMBER 16, 2018
PELTON@PELTONGRAHAM.COM

<u>**VIA ECF**</u>

Honorable Sarah Netburn
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

        Re:    *Cruz, et al. v. Wimpy's Restaurant Inc., et al.*
                <u>Civil Action No. 18 Civ. 4940 (AT)(SN)</u>

Dear Judge Netburn:

      This office represents plaintiffs Alfredo Serapio Cruz ("Cruz") and Guillermo Victoriano Angel ("Angel" and, together with Cruz, the "Named Plaintiffs") with regard to their claims against Defendants Wimpy's Restaurant Inc., Wimpy's Restaurant V Inc. (together with Wimpy's Restaurant Inc., "Wimpy's" or the "Corporate Defendants") and Feliciano Verdejo ("Verdejo" and, together with the Corporate Defendants, the "Defendants"), in the above-referenced matter. This letter is submitted jointly with Lorena P. Duarte, Esq., counsel for Defendants, pursuant to the Fair Labor Standards Act ("FLSA") and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Counsel for the parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A)[1] constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.   Introduction and Procedural History**

      Named plaintiffs Cruz and Angel commenced this action by filing a Class and Collective Action Complaint on behalf of themselves and all similarly situated employees of Defendants on June 4, 2018, asserting claims for unpaid minimum wages and overtime premiums under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and for unpaid spread-of-hours premiums and violations of the wage notice and wage statement requirements of the NYLL

---

[1] The parties are gathering signatures on the attached agreement and anticipate that the remaining parties will sign shortly. The parties will submit the fully-executed agreement to the Court as soon as we are able to obtain all signatures.

and supporting regulations. (*See generally* Dkt. No. 1). On July 13, 2018, Defendants filed their Answer, denying all material allegations. (Dkt. No. 18).

On August 27, 2018, the parties appeared for an initial conference before Judge Torres wherein the parties' consensual case management plan and scheduling order was so-ordered and this matter was referred to Your Honor for settlement purposes. (Dkt. Nos. 24, 26). Plaintiffs and Defendants subsequently exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1), as well as formal interrogatories and requests for documents. With their initial disclosures, Plaintiffs produced a damages analysis based on their best estimates of the hours that they worked and the wages they were paid on August 2, 2018.[2] On or about August 30, 2018, Defendants produced certain tax documents relating to the Corporate Defendants.

Over the course of the next several months, the parties actively engaged in settlement discussions on behalf of the two (2) named plaintiffs. On October 24, 2018, the parties participated in a full-day settlement conference before Your Honor, which ultimately resulted in the present resolution.

## II.   The Settlement Accounts for Litigation Risk

Throughout this litigation, the parties have held significantly different viewpoints on the underlying facts of this matter and Defendants' potential liability. Fundamentally, Defendants argue that Plaintiffs did not work the entire length of employment that they allege in the Complaint and that they never performed work at Wimpy's Restaurant V Inc., located at 2334 2nd Avenue, New York, New York 10035. Plaintiffs, however, are adamant about their dates of employment and allege that while they primarily worked for Wimpy's Restaurant Inc., located at 1822 Amsterdam Avenue, New York, New York 10031, Plaintiff Cruz was often sent to the 2nd Avenue location to cover shifts.

Defendants further argue that they do not met the $500,000.00 gross annual threshold under the FLSA and provided certain tax documents that appear to show Defendant Wimpy's Restaurant V Inc. operating at a loss for at least some portion of the relevant time period. Plaintiffs aver that even if each restaurant standing alone did not have gross revenues in excess of $500,000.00, they are together a single enterprise that would meet the threshold and that the tax records which were provided do not provide an accurate picture of Defendants' revenue as the restaurants do substantial business in cash.

Additionally, the parties vigorously dispute the number of hours that Plaintiffs worked and Defendants' overall liability. Plaintiffs allege that they typically worked five to six (5-6) days per week, for a total of between fifty (50) and sixty-eight (68) hours per week, for which they received a fixed daily or weekly cash salary that did not provide them with at least the statutory minimum wage for all hours that they worked, overtime premiums for hours worked over forty (40) each week or spread-of-hours premiums when they worked in excess of ten (10) hours per day. Defendants contend that Plaintiffs did not work overtime and were always paid above minimum

---

[2] Defendants did not produce any records relating to house worked or wages received by Plaintiffs.

wage for all hours that they worked. Further, Defendants argue that Plaintiffs routinely ate breakfast, lunch, snacks and drinks at Defendants' restaurants, such that Defendants are entitled to a credit against the minimum wage.[3] Finally, Plaintiffs allege that they did not receive a paystub or wage statement with their cash payments showing the hours that they worked or their hourly or overtime rates and were not provided with a wage notice when they were hired or annually prior to February 1, in violation of NYLL § 195. Defendants strongly deny all of Plaintiffs' allegations and dispute that Plaintiffs were not properly paid.

Because Defendants failed to produce records of hours worked and wages paid during the litigation, if the matter proceeded to trial, Plaintiffs would be able to rely on their testimony as to the extent of their work as a matter of just and reasonable inference. While Plaintiffs believe that a factfinder would credit their testimony over the Defendants, Plaintiffs recognize that the lack of documents demonstrating the hours that they worked and the wages they were paid could potentially limit the amount of damages Plaintiffs could recover at trial regarding their minimum wage, overtime and spread-of-hours claims if a factfinder credited Defendants' testimony in its entirety. Due to the fact-intensive nature of these inquiries, it is likely that substantive answers to these disputed issues would not be resolved until after significant additional motion practice, if not a trial. Continued litigation would necessitate additional discovery to establish liability and damages, including written responses to interrogatories and document demands as well as numerous depositions of the individual parties and other employees and/or managers of the Corporate Defendants. After such discovery, Plaintiffs would move for conditional certification of a FLSA collective action followed by a Rule 23 class certification motion and dispositive motion on certain of the disputed legal issues as described above. Based on these disputes, the parties engaged in good-faith, arms-length settlement negotiations, regarding not only Plaintiffs' FLSA claims, but also their pendant state law claims.[4]

Perhaps the biggest litigation risk, however, is Defendants' ability to pay a judgment if one were obtained by Plaintiffs. Defendants' restaurants are a small, family-owned business. As such, rather than move forward with lengthy and costly litigation and potentially recover a judgment that may be impossible to collect, Plaintiffs prefer to settle now, on an individual basis, for an amount that they would be guaranteed to receive under the terms of the settlement.

As set forth above, Plaintiffs' counsel created a damages analysis based on Plaintiffs' best estimates of the hours that they worked and the wages they were paid. For the unpaid minimum wage claim, which was calculated based on the difference between the hourly rate that Plaintiffs were paid (i.e., Plaintiffs' purported day rate or weekly salary divided by the total number of hours worked) and the full minimum wage, Plaintiffs calculated a total of $14,947.00. For Plaintiffs' unpaid overtime claim, which was calculated by multiplying the full minimum wage rate or Plaintiffs' hourly rate, whichever was higher, by 0.5 and multiplying the resulting overtime premium by the number of hours that Plaintiffs worked in excess of forty (40) each week, Plaintiffs calculated a total of $55,715.48. Plaintiffs' calculations for spread-of-hours damages, which were

---

[3] Defendants did not provide records to show that they provided meals, the costs incurred in providing such meals or the extent to which workers actually availed themselves of the meals during the litigation.

[4] Such claims, of course, may be waived by private agreement. *Amaya v. Garden City Irrigation, Inc.*, 2011 U.S. Dist. LEXIS 15316, at *4-5 (E.D.N.Y. Feb. 15, 2011).

calculated by multiplying the number of days each week in which each plaintiff worked a shift or split-shift in excess of ten (10) hours by the applicable minimum wage, totaled $24,954.08. Taken together, the total damages for Plaintiffs' wage claims equaled $95,616.57. When wage notice and wage statement, liquidated damages under the FLSA and NYLL and statutory interest on the NYLL claims at 9% per annum were added to Plaintiffs' "actual" damages, the total alleged damages came out to $244,750.74.

In light of the litigation risks outlined above, Defendants' ability to pay, which was a substantial factor in ultimately reaching the settlement numbers that were agreed to by all the parties, and the risks associated with establishing the calculated damages and proceeding to trial, the parties believe that the proposed settlement is fair and reasonable. Although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they could receive much lower damages, or nothing at all. The parties, thus, believe that this is a fair recovery based on the risks associated with proceeding to trial and establishing the calculated damages, as well as the certainty of receiving compensation for these claims, and the very real possibility that Defendants would be unable to satisfy a judgment for the full amount of damages, if one were obtained.

### III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for the total settlement amount of $50,000.00 (the "Settlement Amount"). Of that amount, $17,119.40 is payable to Plaintiffs' counsel, including $679.16 in expenses for counsel's costs for filing and service of the complaint and mailing copies of Judge Torres's individual rules and June 7, 2018 Initial Pretrial Conference Order to all defendants, plus attorneys' fees in the amount of one-third (33.33%) of the Settlement Amount, after subtracting those expenses (i.e. $16,440.24). The remaining $32,880.60 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage and hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or the Settlement.

The agreement includes a mutual non-disparagement provision. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in an FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds both Plaintiffs and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in an FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting Plaintiffs to make truthful statements about their experiences in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

As well, the mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain attorneys' fees in the event that they prevail.

### IV.    Plaintiffs' Attorney's Fees and Expenses

As set forth in the attached Affidavit of Brent E. Pelton, Esq. (Exhibit B), as of November 16, 2018, Plaintiffs' counsel has spent more than 59 hours in prosecuting and settling this matter, resulting in a lodestar of $15,037.92. Plaintiffs' counsel has spent $679.16 in actual litigation costs. The portion of the settlement amount that Plaintiffs seek as attorney's fees (i.e. $17,119.42) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which represents a modest 1.1 multiplier of the lodestar amount and is consistent with what was agreed upon between the Named Plaintiffs and their counsel in their retainer agreements. The retainer agreements between Plaintiffs and their counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. In fact, the same rates have been approved in connection with a recent wage and hour settlement in the Eastern District, which customarily has slightly lower rates than the SDNY. *See Hall v. Prosource Techs., LLC*, 14-cv-2502, 2016 U.S. Dist. LEXIS 53791 at *38-41 (E.D.N.Y. April 11, 2016). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

For the purposes of this settlement, Defendants take no position with respect to counsel's request for attorneys' fees.

## V. The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[5] Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, including a full-day settlement conference before Your Honor. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs. Rather than move forward with lengthy and costly litigation and potentially recover a judgment that would likely be impossible to collect, settlement at this stage of the case unquestionably constitutes the

---

[5] The parties note that *Cheeks* relies heavily on the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982), and that the Eleventh Circuit itself has subsequently contemplated that the supervision doctrine laid out in that case may apply only where a "compromise" of an FLSA claim has occurred. *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009).

HON. SARAH NETBURN
JOINT SETTLEMENT FAIRNESS LETTER
PAGE **7** OF **7**

most efficient and effective conclusion to this litigation. Additionally, Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

\* \* \* \* \*

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

| **PELTON GRAHAM LLC** | **HANG & ASSOCIATES, PLLC** |
|---|---|
| By: */s/ Brent E. Pelton, Esq.* | By: */s/ Lorena P. Duarte, Esq.* |
| Brent E. Pelton, Esq. | Lorena P. Duarte, Esq. |
| Taylor B. Graham, Esq. | 136-18 39th Avenue, Suite 1003 |
| 111 Broadway, Suite 1503 | Flushing, New York 11354 |
| New York, New York 10006 | Tel: (305)-965-4252 |
| Tel.: (212) 385-9700 | |
| | *Attorneys for Defendants* |
| *Attorneys for Plaintiffs* | |

Enclosures